HAAS OUTDOORS, INC., Plaintiff,

v.

OAK COUNTRY CAMO., INC., Defendant.

No. 1:97CV52–S–A.

United States District Court, N.D. Mississippi, Eastern Division.

March 31, 1997.

W. Whitaker Rayner, Watkins, Ludlam & Stennis, Jackson, MS, for Plaintiff.

John W. Crowell, Gholson, Hicks & Nichols, Columbus, MS and Sumner C. Rosenberg, Needle & Rosenberg, P.C., Atlanta, GA, for Defendant.

## OPINION GRANTING PRELIMINARY INJUNCTION AGAINST DEFENDANT

SENTER, Chief Judge.

This cause is before the court upon plaintiff's motion for preliminary injunction seeking to enjoin Oak Country Camo., Inc. from further use of the Oak Country mark and from further distribution of Oak Country's advertising or catalogs containing portions of Haas' copyrighted materials.

### FACTS

Haas Outdoors, Inc., a West Point, Mississippi corporation, is one of the country's largest manufacturers and distributors of camouflage fabric, clothing, and accessories. Haas began marketing under the "Mossy Oak" trademark in 1986 and has since become a nationally recognized, multimillion dollar force in the sporting industry. In addition to its clothing line, Haas produces a television program entitled "Mossy Oak's Hunting the Country," publishes two magazines a year with a national circulation of 400,000, and licenses its Mossy Oak mark to approximately 500 manufacturers that apply the pattern on products ranging from guns to automobiles. Haas' expenditure of 1.2 million dollars for its annual marketing expense has resulted in national publicity including magazine and newspaper articles in "the high hundreds." At the time of registering the Mossy Oak mark in 1986, Toxey Haas, the owner of Haas Outdoors, was unaware of any other camouflage companies who used the word oak in its pattern name.[1]

As part of its marketing strategy, Haas began producing an annual catalog at the inception of the company in 1986. In 1988, Haas contracted with a local artist in West Point to create charcoal drawings of the various items of clothing offered in the catalog. These drawings are unique in that while the article of clothing is sans a human body, it does, however, take the shape of human movement. For instance, a pair of gloves is laid with one glove over the other with a projected thumb giving the appearance that the gloves are actually molded to human hands. A pair of pants is shown without a torso but with creases and bent knee duplicating a walking gait. The charcoal drawings appeared first in the 1989 Mossy Oak catalog and have been utilized in each catalog thereafter. The 1996 Product Catalog, entitled "America's Most Effective Concealment System," is protected by copyright. Haas Outdoors began using the slogan "America's Most Effective Concealment System" in 1993 to promote a camouflage "mix and match" system of the various patterns sold by Haas. "America's Most Effective Concealment System" appears on clothing labels and in advertisements.

Predecessors in interest to Oak Country have been in the camouflage business for several years marketing camouflage under the marks TreVanish and Piney Woods. In 1996, the defendant began marketing a camouflage pattern under the mark of Oak Country. Tim Gump, the creator of the Oak

---

1. Haas testified that the Mossy Oak name evokes a nostalgic connection with him in that he grew up and hunted property in Alabama called "Mossy Oak."

Country pattern, attempted to sell his pattern to Haas Outdoors in 1995.[2] In August of 1996, Oak Country exhibited its camouflage at a trade show for customers called "Buckarama" where Mossy Oak representatives first became aware of Oak Country's attempt to mass market its camouflage. Oak Country again exhibited at a January, 1997 trade show in Louisville, Kentucky where Oak Country offered copies of its 1997 catalog.

The 1997 Oak Country catalog contained charcoal drawings of its clothing, many in the exact style and pose of the charcoal drawings of clothing offered in the Mossy Oak catalog. Oak Country introduced its slogan "The Most Complete Concealment System Ever Designed" which Haas argues is confusingly similar to its trademarked slogan "America's Most Effective Concealment System." Additionally, the 1997 Oak Country catalog also contained the following text:

> For those mornings and evenings afield when the situation requires the ultimate in silence. Picture an old gobbler, head cocked, eyes strained, trying to locate the hen that made the last soft purr, or a trophy buck quietly slipping past your stand, with every sense fine tuned for the slightest noise. These are the times you'll have extra confidence because you chose OAK COUNTRY. Comfort and quality, attention to detail, and the very latest cutting edge technology give you that needed assurance to concentrate only on the shot.

The 1996 catalog for Mossy Oak contains the following text:

> For those cool mornings and evenings afield when the situation requires the ultimate in silence. Picture an old gobbler, head cocked, eyes strained, trying to locate the hen that made the last soft yelp, or a nice buck anxiously slipping past your stand, every sense alert. These are the times you'll want our Traditional Woodsman Series. Comfort and quality related to the past, with the technology, patterns features and designs of the future.

2. Haas testified that an individual named Bob Stoover approached Haas about the pattern, that Haas did, indeed, view the pattern in 1995, and that he was aware that the name incorporated the word "oak." However, based upon company policy of marketing only internally created patterns, Haas told Stoover that he was not interested in the pattern and, additionally, that he "would have a problem with it if it ever went out."

## ANALYSIS

Before the extraordinary relief of preliminary injunction will be granted, plaintiffs must prove four prerequisites:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). The grant or denial of injunctive relief rests in the discretion of the district court, *id.,* and "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Id.* at 573. The court finds that the plaintiff has carried its burden of persuasion on every *Canal* factor.

After viewing the evidence and making credibility determinations upon a hearing on this matter, this court finds a substantial likelihood that the plaintiff will prevail on the merits. Mossy Oak seeks redress against Oak Country based upon trademark infringement, trademark dilution, and copyright infringement. The standard for trademark infringement is likelihood of confusion as to the source or origin of the products. *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591 (5th Cir.1985). In making a determination of likelihood of confusion, courts in the Fifth Circuit consider seven factors:

1. The type and strength of the plaintiff's mark;

2. The degree of similarity between the two marks;

3. The similarity of the products;

4. The identity of retail outlets and purchasers;

5. The identity of advertising media;

6. The defendant's intent in adopting its mark;

7. Evidence of actual confusion.

*Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 489–90 (5th Cir.1992). Trademark dilution, embodied at 15 U.S.C. § 1125(c), requires (1) ownership of a distinctive mark, and (2) a likelihood of dilution. *Pebble Beach Co. v. Tour 18 I, Ltd.,* 942 F.Supp. 1513, 1564 (S.D.Tex.1996). A likelihood of dilution may be shown by "tarnishment" or by "blurring." *Id.* Dilution from tarnishment "results from unauthorized use which tarnishes, degrades, or dilutes the mark's distinctive quality." *Minnesota Mining and Manufacturing v. Rauh Rubber,* 943 F.Supp. 1117 (D.Minn. 1996). Dilution from blurring occurs when the mark appears on other, unrelated goods weakening the distinctive link between the mark and the trademark holder's goods. *Id.* Copyright infringement requires (1) ownership of a valid copyright, and (2) copying of the work. *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981). While the court makes no determination as to the validity of the trademark dilution claim, this court finds that sufficient evidence was introduced during the hearing to support a finding that the plaintiff may well succeed on the merits of both infringement claims at trial.

■ In regard to the second *Canal* factor, threat of irreparable injury if the injunction is not granted, Haas argues that Oak Country will continue to "reap where it has not sown." Mossy Oak argues that, in light of its 1.2 million dollar annual advertising expenditure, should Oak Country be allowed to continue misappropriating Haas' goodwill, the impact on Haas' reputation cannot be quantified. Further, Haas seeks to enjoin Oak Country from further distribution and production of its catalog. Oak Country argues that Mossy Oak is precluded from asserting irreparable harm based upon Haas' unreasonable delay in bringing its motion for a preliminary injunction. See *American Rice v. Arkansas Rice Growers Cooperative Association,* 532 F.Supp. 1376 (S.D.Tex.1982),

aff'd 701 F.2d 408 (5th Cir.1983). Oak Country argues that Haas was aware of the mark as early as November, 1995 and that Haas knew or should have known that Oak Country camouflage was being marketed in January, 1996 when both companies attended a trade show in Dallas. Since the January, 1996 trade show, Oak Country has invested $280,000 in production of goods and $390,000 in overhead expenses. But for the delay in bringing the present suit according to defendant's argument, Oak Country "may have decided to come up with a mark that would have been more accommodating, simply to avoid the cost and risk of lawsuits." In regard to the charcoal catalog drawings, Oak Country presented evidence that the drawings had been used in the 1990 or 1992[3] catalog of Piney Woods, the predecessor in interest to Oak Country.

■ The court is unpersuaded by Oak Woods' argument of unreasonable delay. Based solely on the misappropriated text present in Oak Country's 1997 catalog, this court is well within its province to grant the plaintiff's motion. See *West Publishing Co. v. Mead Data Central, Inc.,* 799 F.2d 1219, 1229 (8th Cir.1986) (a prima facie showing of copyright infringement raises a presumption of irreparable harm for purposes of granting a preliminary injunction) (citing *Apple Computer, Inc., v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983)). In undisputed testimony, Toxey Haas established that Haas Outdoors first became aware of Oak Country's 1997 catalog at the January, 1997, Louisville, Kentucky trade show. Haas Outdoors has invested millions of dollars and eleven years building a name recognized by hunters across the country. The court agrees with Haas that damage to its reputation and goodwill is simply not quantifiable. Given the combined effects of duplication in catalog presentation, text, slogans, art work, and press releases, consumers who might not otherwise become confused may well believe that the imagery evoked and the repetition of oak in the trade names are merely part of an overall strategy by Mossy Oak to market

3. After testifying that the undated Piney Woods catalog was the 1990 edition, the defendant testified that a clerical misprint had resulted twice in captions for photographs in the 1990 catalog where two separate photographs sported trophy game for the 1992 year.

products through a subsidiary. Therefore, irreparable injury exists in that Mossy Oak may sustain damage to its goodwill and reputation should Oak Country be allowed to continue in its present mode.

■ Haas supports its "balancing of hardships" factor under *Canal* by referring again to the damage and diminishment of its reputation, goodwill, and strong mark should relief be denied. Further, Haas argues that any harm to Oak Country is a creation of its own doing, and, therefore, the balancing of hardship cannot tip towards Oak Country. Under the relief requested by Haas, Oak Country may continue to sell its pattern and even do so out of its existing catalog. "Because Haas has not attempted to enjoin further use by Oak Country of its telephone number and mailing address, orders may continue to be received by Oak Country, albeit under a different name not prohibited by the Court in its Order." On the other hand, the Oak Country mark is stamped onto the camouflage fabric which, argues the defendant, would result in prohibition of any sales should the injunction be granted. This court is very much aware of the impact upon Oak Country's continued operations; however, this court agrees that any resulting harm to Oak Country is a creation of its own doing given the intentional appearance of plagiarism present in the 1997 Oak Country catalog. Therefore, the balancing of hardship weighs in favor of granting the preliminary injunction.

Additionally, this court finds that there is a strong public interest in protecting intellectual property rights as well as in protecting fair competition in the market. Therefore, the granting of this preliminary injunction will not disserve the public. Haas has met its burden of establishing the four factors under *Canal* and, therefore, this court finds that the preliminary injunction should issue.

An appropriate order shall issue.

### ORDER GRANTING PRELIMINARY INJUNCTION AGAINST DEFENDANT

In accordance with an opinion issued contemporaneously herewith, it is ORDERED:

That plaintiff's motion for preliminary injunction is granted;

That defendant is hereby enjoined from further use of the OAK COUNTRY mark or trade name or any mark or trade name likely to cause confusion with Haas' MOSSY OAK registered marks or Haas' AMERICA'S MOST EFFECTIVE CONCEALMENT SYSTEM mark;

That defendant is also enjoined from further copying or distributing any portion of Oak Country's advertising or catalogs containing portions of Haas' copyrighted materials;

That defendant is enjoined from further misappropriation of Haas' trade dress contained in Haas' media releases and product catalogs;

That this injunction is binding upon defendant, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise;

That the magistrate judge is directed to place this cause on an expedited track for further proceedings in accordance with this court's Uniform Civil Justice Expense and Delay Reduction Plan.